**SHER TREMONTE LLP**

December 1, 2020

**VIA ECF**

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:    *Jesus Berrios o/b/o Vanessa Rivera v. State of New York, et al.*,
                Case No. 18 Civ. 4194 (LDH)

Dear Judge DeArcy Hall:

      We write on behalf of our client, Jesus Berrios as legal guardian for Vanessa Rivera, in response to the Court's January 10, 20202 Order to Show Cause. We respectfully submit, for the reasons stated herein, that Mr. Berrios' claims on behalf of Vanessa Rivera are not time-barred. In the alternative, the Court should hold an evidentiary hearing on the question of equitable tolling on the basis of Ms. Rivera's mental illness and impairment.

*Relevant Factual Background*

      Vanessa Rivera, Mr. Berrios' 41-year old niece, has been under psychiatric care since she was 11 years old and hospitalized since she was 18 years old. Dkt. 1, at ECF 60, 78, 97. She suffers from Mild Mental Retardation[1], bipolar disorder, and "limited cognitive ability." *Id.* 49, 78, 127; *see also id.* 60 (noting Ms. Rivera has "below average" intelligence and has "limited insight and judgment"). Ms. Rivera's mental ability is the equivalent of a child between the ages of five and nine years old. *Id.* 49[2]; *see also id.* 90 (noting Ms. Rivera "is extremely childlike and presents as much younger than her stated age, perhaps as young as a preschooler"). Her condition "is permanent in nature or likely to continue indefinitely." *Id.* 63, 71.

      On December 28, 2004, Ms. Rivera was transferred from Bayley Seton Hospital to South Beach Psychiatric Center ("South Beach") because she was "decompensat[ing]," "unmanageable," and "was violent." *Id.* 60, 64. While at South Beach, Ms. Rivera was raped on two occasions—on January 29 and April 22, 2005—by the same male patient. Berrios Decl. ¶¶ 6-7. On January 29, 2005, Ms. Rivera was taken to Staten Island University Hospital for a medical evaluation and treatment for sexual assault. Dkt. 1, ECF 50.

---

[1] During the relevant events at issue, Ms. Rivera had a full-scale IQ of 65, Dkt. 1, ECF 67-68, 79, classifying her as "intellectually disabled." *See* Brian Resnick, *IQ, Explained in 9 Charts*, Vox (Oct. 10, 2017), https://www.vox.com/2016/5/24/11723182/iq-test-intelligence.

[2] According to Mr. Berrios, the 2004 psychological assessment by Dr. Kaplan is still the one used by Ms. Rivera's treating physicians. Declaration of Jesus Berrios ("Berrios Decl.") ¶¶ 12-13.

The Honorable LaShann DeArcy Hall
December 1, 2020
Page 2

     Days later, Ms. Rivera disclosed the assault to Mr. Berrios as well as to her brother. *Id.* 73. Mr. Berrios, who was "actively involved in her treatment" expressed "concerns about her ability to consent to sex given her diagnosis of Mild Mental Retardation" to South Beach staff. *Id.* 82, 90, 130, 144. He then requested a meeting with South Beach personnel regarding the assault, during which he was informed that he would need Ms. Rivera's consent for release of her medical records, which he ultimately obtained. *Id.*; *see also id.* 73-75, 138-40. On March 7, 2005, Mr. Berrios[3] sent a letter to the then-Commissioner of the New York State Office of Mental Health, the New York State Commission on the Quality of Care and Advocacy for Persons with Disabilities, and the New York State Mental Hygiene Legal Service notifying them of Ms. Rivera's assault and "request[ing] a full investigation of the incident." *Id.* 73-75. To Mr. Berrios' knowledge, none of these organizations provided Ms. Rivera with legal assistance or counseling after either assault. Berrios Decl. ¶ 10.

     Despite Ms. Rivera alleging being raped twice, medical staff at South Beach repeatedly noted in Ms. Rivera's file that she engaged in consensual sex on those occasions. *See, e.g.*, Dkt. 1, ECF 82 ("Since her admission to SRII, she had sex with another male patient (ST) on 1/22/05[4] and then again on 4/22/05 and was transferred as a result. . . . The treatment team . . . will continue to educate her about safe sex practices and the consequences of risky sexual behavior."); *id.* 86 ("[Ms. Rivera] had sex on two occasions with two different males once on 1/22/05 + 4/22/05."); *id.* 87 (noting that Ms. Rivera is "educated on the health and legal consequences of risky sexual behavior" while also noting that Ms. Rivera "reported that a male patient . . . has propositioned her for sex and marriage"); *id.* 90 ("[Ms. Rivera] was transferred [to another unit] because of sexually inappropriate behavior. She had sex with another male patient (ST) on 1/22/05 and then again on 4/22/05."); *id.* 98, 114, 117, 125 (same); *see also id.* 109-10, 113, 141-43 (stating that Ms. Rivera said she had consensual sex). Ms. Rivera was ultimately transferred from South Beach in August 2006 and remains in a residential care facility to this day. Berrios Decl. ¶¶ 3, 5, 11.

     On March 21, 2006, Mr. Berrios filed a petition in Surrogate Court to be appointed Ms. Rivera's legal guardian and requesting the ability to "maintain any legal action in any court of the United States [o]n behalf of Vanessa Rivera." **Ex. A** (copy of guardianship petition). His appointment was contested by South Beach staff and there was a factual dispute about Ms. Rivera's wishes for a guardian. *Compare id.* 135 (note signed by Ms. Rivera asking her attorney to "prepare a petition requesting the court to appoint my uncle my legal guardian") *with id.* 123 (psychologist stating that "Ms. Rivera . . . did not want her uncle to be her legal guardian"). Mr. Berrios' application for guardianship was rejected on April 17, 2007 because he "failed to provide the requisite affidavits from two doctors [at South Beach] certifying that Vanessa R. cannot manage herself and/or her affairs." **Ex. B** (copy of Second Department decision *In re Vanessa R.*, 59 A.D.3d 726, 873 N.Y.S.2d 491 (2d Dep't 2009)). His appeal was denied on February 24, 2009. *Id.*

     On May 21, 2009, Mr. Berrios attempted to bring nearly identical claims to this action on behalf of Ms. Rivera in this Court. *See* **Ex. C** (copy of the complaint, sans accompanying exhibits,

---

[3] Mr. Berrios and Ms. Rivera's brother are the only family involved in her treatment. Dkt. 1, ECF 112, 122.

[4] Some of the entries incorrectly refer to the date of the first sexual assault as January 22, 2005. The correct date is January 29, 2005. *See* Dkt. 1, ECF 50.

The Honorable LaShann DeArcy Hall
December 1, 2020
Page 3

filed in *Berrios v. State of New York et al.*, No. 09 Civ. 2236 (E.D.N.Y.) (Dearie, J.)). His case was dismissed on July 27, 2009 because Mr. Berrios was not Ms. Rivera's legal guardian and was not represented by an attorney. **Ex. D** (copy of the Court's opinion). On June 21, 2010, Mr. Berrios again attempted to bring nearly identical claims to this action on behalf of Ms. Rivera in this Court. *See* **Ex. E** (copy of the complaint, sans accompanying exhibits, filed in *Berrios v. State of New York et al.*, No. 10 Civ. 2897 (E.D.N.Y.) (Dearie, J.)). The case was dismissed on February 14, 2011 because Mr. Berrios was not Ms. Rivera's legal guardian and was not represented by an attorney. **Ex. F** (copy of the Court's opinion).

On March 23, 2018, Mr. Berrios again applied for guardianship of Ms. Rivera and, on July 13, 2018, was appointed Ms. Rivera's legal guardian. Dkt. 1, ECF 145-54. As part of the Surrogate Court's order, Mr. Berrios was explicitly given the power to "explore legal recourse with regard to any past injuries allegedly sustained by Vanessa Rivera, and have the authority to commence litigation for those matters on behalf of Vanessa Rivera." *Id.* 149 (emphases omitted). One week later, Mr. Berrios filed the instant action. *See generally* Dkt. 1.

*Legal Standard*

As a general matter, a litigant seeking equitable tolling must establish two elements: "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010). A plaintiff may qualify for equitable tolling "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal citations and quotation marks omitted), *as amended* (July 29, 2003); *see also Stella v. Potter*, 297 F. App'x 43, 45–46 (2d Cir. 2008) ("[T]his Court has recognized that mental illness can be a basis for tolling the limitations period.").

The appropriateness of equitable tolling on the grounds of mental illness or impairment is "often a fact-intensive question" and "where the facts are disputed, it should not be decided without an evidentiary hearing." *Tulczynska v. Queens Hosp. Ctr.*, No. 17-CV-1669, 2020 WL 2836759, at *5 (S.D.N.Y. June 1, 2020); *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 513–14 (2d Cir. 2002) ("[I]f the district court reaches the equitable tolling argument, we think the proof proffered by claimant's counsel is sufficient to warrant an evidentiary hearing on the question of whether plaintiff's mental illness impaired counsel's efforts to file a timely request for review."); *see also Canales v. Sullivan*, 936 F.2d 755, 756 (2d Cir.) ("Because [appellant] has averred that mental impairment prevented her from filing a timely appeal, we reverse the district court's dismissal of her complaint and remand for an evidentiary hearing to determine if her condition warrants equitable tolling."), *on reh'g*, 947 F.2d 45 (2d Cir. 1991); *Stella*, 297 F. App'x at 45–46 (vacating and remanding district court's denial of equitable tolling without "a full record"); *cf. Tate v. C.E. Bradley Labs., Inc.*, No. 2:12-CV-216, 2013 WL 3560970, at *3 (D. Vt. July 11, 2013) ("Because equitable tolling is highly fact-specific, the Second Circuit has found that the issue is best analyzed in the context of summary judgment.").

3

The Honorable LaShann DeArcy Hall
December 1, 2020
Page 4

Moreover, a plaintiff seeking equitable tolling on the grounds of mental illness is not required to demonstrate that "[s]he has been pursuing [her] rights diligently" as courts "have generally held that a plaintiff's efforts to pursue [her] legal rights while allegedly incapacitated undermine [her] claim for equitable tolling." *Cadieux v. Donahoe*, No. 5:11-CV-185, 2012 WL 2884824, at *7 (D. Vt. July 13, 2012); *see also Viti v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 230 (S.D.N.Y. 2011) ("It is well settled that if the plaintiff was actually taking steps to protect his rights, even if [s]he was mentally ill . . . , [s]he cannot receive any benefit from equitable tolling.").

### *The Statute of Limitations Should Be Equitably Tolled*

The statute of limitations should be equitably tolled not only because of Ms. Rivera's psychiatric history, but because of the unique circumstances of this case concerning her guardianship.[5]

***First***, the tolling of the limitations period is warranted by Ms. Rivera's severe mental illness and impairment—including Mild Mental Retardation, bipolar disorder, and "limited cognitive ability"—which has required continued hospitalization for over twenty years. Dkt. 1, ECF 49, 78, 127. As the medical records attest, Ms. Rivera's mental ability is the equivalent of a child between the ages of five and nine years old, she is "extremely childlike," and she presents as "much younger than her stated age, perhaps as young as a preschooler." *Id.* 49, 90; *see also id.* 125. She also has "poor" insight, judgment, and impulse control, is "unpredictable," and has a "history of violence." *Id.* 116, 125. None of the medical evidence—coupled with the fact that Ms. Rivera was "unrepresented for the entirety of the limitations period," *Richardson v. Thompson*, No. 16-C-7422, 2019 WL 3573578, at *13 (N.D. Ill. Aug. 6, 2019)—lends itself to the conclusion that Ms. Rivera would be capable of bringing (let alone prosecuting) a *pro se* Section 1983 claim (a statute that "is often difficult to figure out" "[e]ven for constitutional scholars"[6]).

As Ms. Rivera's condition "is permanent in nature or likely to continue indefinitely," Dkt. 1, ECF 63, 71, she is "incapable of comprehending and protecting [her] legal rights and liabilities," *Decrosta v. Runyon*, No. 90-CV-1269, 1993 WL 117583, at *3 (N.D.N.Y. Apr. 14, 1993). In fact, Mr. Berrios was appointed guardian for the very purpose of "explor[ing] legal recourse with regard to any past injuries allegedly sustained by Vanessa Rivera, and hav[ing] the authority to commence litigation for those matters on behalf of Vanessa Rivera." Dkt. 1, ECF 149. Ms. Rivera's "over-all inability to function in society," *Hwang v. Grace Rd. Church (in New York)*, No. 14-CV-7187, 2016 WL 1060247, at *7 (E.D.N.Y. Mar. 14, 2016), is further evidenced by the fact that when she

---

[5] In dismissing this case initially, the Honorable Pamela K. Chen found that the "gap of about 11 years" between Mr. Berrios' applications for guardianship was "not a sufficient reason to toll the statute of limitations." Dkt. 32, at 6-7. However, this was error as the Court must consider *Ms. Rivera's* actions, not Mr. Berrios' (until he became her guardian) in determining whether equitable tolling applies. *See Graves v. Brookdale University Hosp.*, No. 0306857/2008, 2018 WL 10797932, at *1 (N.Y. Sup. Ct. July 26, 2018) ("[T]he statute of limitation is tolled for disabled individuals who, because of an overall inability to function in society, are unable to protect their legal rights. . . . [H]owever, this entitlement ends once a guardian *is appointed*.") (emphasis added), *aff'd*, 177 A.D.3d 553, 114 N.Y.S.3d 53 (2019).

[6] Martin A. Schwartz, *Fundamental of Section 1983 Litigation*, 17 Touro L.R. 525, 529 (2001).

The Honorable LaShann DeArcy Hall
December 1, 2020
Page 5

was admitted to South Beach, a psychiatrist certified that Ms. Rivera, "as a result of [her] mental illness, . . . pose[d] a substantial threat of harm to herself or others," and had "the inability to safely survive in the community," Dkt. 1, ECF 134. Similarly, that Ms. Rivera currently requires a guardian (Mr. Berrios), has been continuously hospitalized "requiring 24/7 supervision," is unable to work, and requires constant medication, also weigh in favor of a finding of equitable tolling on the basis of mental impairment. *Hwang*, 2016 WL 1060247, at *7.[7]

***Second***, the unique circumstances of Ms. Rivera's guardianship and South Beach's handling of Ms. Rivera's assaults also weigh in favor of equitable tolling.

Ms. Rivera contemporaneously disclosed her sexual assaults to Mr. Berrios as well as to her brother. After the first rape, Mr. Berrios, who was "actively involved in [Ms. Rivera's] treatment," expressed "concerns about her ability to consent to sex given her diagnosis of Mild Mental Retardation" to South Beach staff. *Id.* 82, 90, 130, 144. Mr. Berrios even met with Ms. Rivera's therapist, among others, to "express[] his concern about the incident" and was informed that Ms. Rivera "was taken to the emergency room and we took appropriate precautions" and "provided emotional support as needed." *Id.* 130. There is no mention of any efforts, after the first or second rape, to provide Ms. Rivera with legal counseling or assistance regarding her potential claims against the facility and its staff. In fact, instead of helping Ms. Rivera, doctors at South Beach "educated her on the health and legal consequences of risky sexual behavior," accused her of "sexually inappropriate behavior," and found that she had "poor . . . sexual impulses"—laying the blame entirely on Ms. Rivera for these assaults. *Id.* 60, 113.

Moreover, when Mr. Berrios attempted to take action on Ms. Rivera's behalf—which he had no duty to do—his efforts were thwarted. In March 2006, nine months after Ms. Rivera's second rape, Mr. Berrios filed a petition in Surrogate Court to be appointed Ms. Rivera's legal guardian and requesting the ability to "maintain any legal action in any court of the United States [o]n behalf of Vanessa Rivera." **Ex. A.** His goal was to bring a lawsuit, similar to the instant action, against South Beach and individual staff members (on behalf of Ms. Rivera) regarding the assaults. Berrios Decl. ¶ 8. However, the South Beach medical staff strongly objected to Mr. Berrios' appointment and his petition was ultimately rejected because none of the South Beach doctors would provide him with the requisite certifications that Ms. Rivera could not manage herself and her affairs. **Ex. B**.[8] Mr. Berrios' initial bid for guardianship was ultimately rejected in February 2009—after the expiry of the three-year statute of limitations for Section 1983 claims. *Id.*[9] As a result, while South Beach opposed Mr. Berrios' attempt for guardianship until the statute of limitations expired, it did nothing to alert Ms. Rivera to the existence of her claim and, in fact, attempted to undermine any claims by stating that the sexual encounters were consensual.

---

[7] For these same reasons, equitable tolling should be applied from 2005 to 2015 under N.Y. C.P.L.R. § 208.

[8] As one staff member stated in opposition to Mr. Berrios' application, "This system is what any parent would want for their child if you had any with these diagnoses because you would never have to worry what would happen to her. The [Mental Retardation] facility follows them throughout their life!" Dkt. 1, ECF 112.

[9] Despite the rejection of his guardianship—and, therefore, his lack of standing—Mr. Berrios then tried to bring two failed suits in this Court against South Beach for the 2005 assaults. He was not granted guardianship until March 2018 and filed this action precisely one week later.

5

The Honorable LaShann DeArcy Hall
December 1, 2020
Page 6

Therefore, Defendants should not benefit from their own misconduct and the statute of limitations should be equitably tolled.

*Conclusion*

      For the reasons stated herein this Court should find that Plaintiff's claims are not time-barred or, in the alternative, hold an evidentiary hearing on the issue of equitable tolling.

                                                  Respectfully submitted,

                                                  /s/Michael Tremonte
                                                  Michael Tremonte
                                                  Alexandra Elenowitz-Hess

                                                  *Pro Bono Counsel for*
                                                  *Jesus Berrios o/b/o Vanessa Rivera*

cc:      Erin P. Kandel (via ECF)
            Jane Peridas Rosales (via ECF)
            Andrew James Rauchberg (via ECF)